IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

ASSOCIATION CASUALTY INSURANCE COMPANY                                    PLAINTIFF

V.                                                         CAUSE NO.: 1:12CV022-SA-DAS

MAJOR MART, INC.; GREGORY SHARP;
MITCHELL DISTRIBUTING COMPANY, INC.;
and MITCHELL BEVERAGE, LLC; and
JOHN DOES 1-10                                                            DEFENDANTS

MEMORANDUM OPINION

Association Casualty Insurance Company filed this action seeking a declaration that there is no duty to defend or indemnify Major Mart and/or Greg Sharp, President of Major Mart, pursuant to the insurance policy issued by Association Casualty. Major Mart and Sharp filed a Motion for Summary Judgment [23] within the dispositive motions deadline established in this case. Association Casualty filed a Cross-Motion for Summary Judgment [30] outside of that time limit, but asked for leave of court to file the motion untimely [34]. Defendant did not respond to that Motion to Accept Late Filing, and pursuant to the Local Rules, that motion is granted as unopposed.

*Factual and Procedural Background*

Major Mart filed suit in the United States District Court for the Southern District of Mississippi against Mitchell Distributing Company, Inc., and Mitchell Beverage, LLC ("Mitchell") for alleged anti-trust and state law violations. Mitchell answered and brought a Counterclaim against Major Mart and its President, Greg Sharp. The Counterclaim asserted that Major Mart and Sharp engaged in "guerilla warfare" designed to "ruin" Mitchell after a dispute in September of 2010 arose over the pricing of Anheuser-Busch products in Major Mart's New Albany store. Mitchell alleged that Sharp and Major Mart told customers that Mitchell was

distributing "bad" or "stale" beer, removed all forms of advertising for Mitchell-distributed products, converted several neon beer signs, and instituted specific rules for Mitchell's delivery of products throughout its stores. Mitchell claims that Major Mart breached the covenant of good faith and fair dealing, committed slander and defamation, tortiously interfered with business relations, and converted the neon beer signs. Mitchell alleges those causes of action against Sharp as well, with the addition of a tortious interference with contract claim.

Upon notice of the counterclaim, Association Casualty issued a reservation of rights letter to Major Mart and Sharp indicating that pursuant to their interpretation of the insurance policy, there was no duty to defend; however, Association Casualty noted that it would provide a defense and reserved the right to reimbursement upon a determination by a court that confirmed no duty to defend arose from the insurance policy.

Association Casualty filed a Complaint for Declaratory Judgment that pursuant to the relevant policy of insurance, no duty to defend or indemnify arises. The parties have filed competing motions for summary judgment, and the Court finds as follows:

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals there is no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts demonstrating a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court is only obligated to consider cited materials but may consider other materials in the record. Id. at 56(c)(3). The court must resolve factual controversies in favor of the nonmovant "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

*Discussion and Analysis*

Mississippi substantive law applies in this diversity case. See Barden Miss. Gaming Ltd. Liab. Corp. v. Great N. Ins. Co., 638 F.3d 476, 478 (5th Cir. 2011). In Mississippi, "the interpretation of an insurance policy is a question of law, not one of fact." Corban v. United Services Auto. Ass'n., 20 So. 3d 601, 609 (Miss. 2009) (quoting Noxubee Co. Sch. Dist. v. United Nat'l Ins. Co., 883 So. 2d 1159, 1165 (Miss. 2004)). Insurance policies are contracts, and as such, must be enforced according to their written provisions. Id. (citing Noxubee Co., 883 So. 2d at 1166. When parties to a contract make mutual promises, they are entitled to the benefit of that bargain and insurance companies must therefore be able to "rely on their statements of coverage, exclusions, disclaimers, definitions, and other provisions." Id. As such, the court

relies upon familiar rules of construction to discern their meaning. Progressive Gulf Ins. Co. v. We Care Day Care Center, Inc., 953 So. 2d 250, 253 (Miss. Ct. App. 2006).

The policy is to be considered as a whole, giving weight to all relevant portions and, whenever possible, giving "operable effect to every provision in order to reach a reasonable overall result." Id. (citing J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co., 723 So. 2d 550, 552 (Miss. 1998). While ambiguities in an insurance contract are to be construed against the insurer, a clear and unambiguous contract will be enforced as written. Id. In reviewing a policy, terms should be understood in their "plain, ordinary, and popular sense rather than in a philosophical or scientific sense." Blackledge v. Omega Ins. Co., 740 So. 2d 295, 298 (Miss. 1999).

Ambiguities exist in a policy when the policy can be logically interpreted in two or more ways, and at least one of those interpretations provides for coverage. Id. (citing United States Fid. & Guar. Co. v. Martin, 998 So. 2d 956, 963 (Miss. 2008)). An ambiguity does not exist simply because the parties disagree over the interpretation of the applicable language. Id. When the insurer relies upon a policy exclusion, however, the exclusion must be clear and unmistakable as those clauses are strictly interpreted. Id. If the insurer shows an exclusion applies, the burden shifts back to the insured to show that there is an exception to the exclusion. Legacy Condominiums, Inc. v. Landmark American Ins. Co., 2008 WL 80373, * 4 (S.D. Miss. Jan. 4, 2008) (citing Guaranty Nat. Ins. Co. v. Vic Mfg. Co., 143 F.3d 192, 194 (5th Cir. 1998)); see also U.S. Fidelity and Guar. Co. v. B & B Oil Well Serv., Inc., 910 F. Supp. 1172, 1182 (S.D. Miss. 1995).

An insurer's duty to defend is determined by comparing the language of the insurance policy with the allegations of wrongdoing asserted in the underlying action. See Delta Pride

Catfish, Inc. v. Home Ins. Co., 697 So. 2d 400, 403 (Miss. 1997). Not surprisingly, "[T]he duty to defend is broader than the insurer's duty to indemnify under its policy of insurance: the insurer has a duty to defend when there is any basis for potential liability under the policy." Titan Indem. Co. v. Pope, 876 So. 2d 1096, 1101 (Miss. Ct. App. 2004) (quoting Merchants Co. v. Am. Motorists Ins. Co., 794 F. Supp. 611, 617 (S.D. Miss. 1992)).

The general rule under Mississippi law is that an insurer's duty to defend hinges on the allegations in the underlying complaint. American States Ins. Co. v. Natchez Steam Laundry, 131 F.3d 551, 552 (5th Cir. 1998) (citing State Farm Mut. Auto. Ins. Co. v. Taylor, 233 So. 2d 805, 808 (Miss. 1970)). That duty is measured by the "allegations in the plaintiff's pleadings regardless of the ultimate outcome of the action." Id. (citing EEOC v. Southern Pub. Co., 894 F.2d 785, 789 (5th Cir. 1990)). As such, "if the factual allegations of the complaint bring the action within the coverage of the policy, 'irrespective of what the actual facts may later prove to be,' the insurer is contractually bound to defend its insured.'" Meng v. Bituminous Cas. Corp., 626 F. Supp. 1237, 1240 (S.D. Miss. 1986) (relying on the "allegations of the complaint" rule under Mississippi law) (citing Preferred Risk Mut. Ins. Co. v. Poole, 411 F. Supp. 429, 435 (N.D. Miss. 1976)). In sum, a duty to defend arises if the "complaint alleges facts which are arguably within the policy's coverage." Acceptance Ins. Co. v. Powe Timber Co., Inc., 403 F. Supp. 2d 552, 554 (S.D. Miss. 2005); Mitchell v. State Farm Fire & Cas. Co., 799 F. Supp. 2d 680, 687 (N.D. Miss. 2011); Cullop v. Sphere Drake Ins. Co., 129 F. Supp. 2d 981, 982 (S.D. Miss. 2001) ("The insurer has a duty to defend when there is any basis for potential liability under the policy."). Put differently, Association Casualty can refuse to defend Major Mart and Sharp against the underlying counterclaim "only if it is clear from the face of the [underlying Counterclaim] that the allegations therein are not covered [by the Policy]." Am. Guar., 273 F.3d

at 610 (citations omitted). Moreover, where, as here, the underlying lawsuit alleges multiple grounds for recovery, the insurer "must provide a defense if any ground falls within the terms of the policy." Id. at 611 (citations omitted).

In the case at hand, the parties' dispute turns squarely on whether the exclusions contained within the policy preclude coverage.[1] Absent the exclusion, Association Casualty does not contest that coverage is proper. The applicable policy language states as follows:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and adverting injury" to which this insurance does not apply.

The policy further defines the term "personal and advertising injury" as an injury arising out of "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services . . . ." The pertinent policy exclusions that Association Casualty argues preclude coverage include:

> a. Knowing Violation of Rights of Others
> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".
>
> b. Material Published With Knowledge of Falsity
> "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.
>
> * * *
>
> f. Breach of Contract
> "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement."

---

[1] The parties have agreed that no coverage exists under "Coverage A Bodily Injury and Property Damage Liability." Therefore, the Court only examines "Coverage B Personal and Advertising Injury."

Association Casualty contends it does not owe a duty to defend or a duty to indemnify because the Counterclaim's factual allegations state that Major Mart's and Sharp's conduct: (1) was knowingly false, (2) was intentional, (3) was part of a "campaign of guerilla warfare", and (4) arose out of a "breach of contract."

The insurer specifically contends that the language "arising out of a breach of contract" is to be read broadly, such that all actions alleged on the part of Major Mart would arise from the contract between Major Mart and Mitchell. Indeed, Association Casualty notes that the Counterclaim alleges that Greg Sharp "maliciously interfered with Mitchell's ability to perform its contract with Major Mart for the purposes of injuring Mitchell's business."

The phrase "arising out of" is "ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of,' or 'flowing from.'" American Guar. & Liab. Ins. Co. v. 1906 Co., 129 F.3d 802, 807 (5th Cir. 1997) (citing Blue Bird Body Co. v. Ryder Truck Rental, Inc., 583 F.2d 717, 726 (5th Cir.1978)). In the insurance context, this phrase is often interpreted to require a causal connection between the injuries alleged and the objects made subject to the phrase. Id. Here, Association Casualty contends that the alleged injuries to Mitchell arose out of the contractual relationship between it and Major Mart, and in particular, an incident regarding pricing in September of 2010. In the Counterclaim, Mitchell claimed that in September of 2010, a Major Mart store manager argued with a Mitchell employee's pricing of beer. Mitchell contended that it regularly placed price tags on its product as a service to its customers. The Major Mart store manager allegedly requested that the beer be priced by the Mitchell employee lower than the cost of the product to the store. The Mitchell employee refused to price the product as requested; however, Major Mart lowered the prices on the beer itself. Mitchell alleged that Sharp demanded to be reimbursed for money lost on the lower priced products. Because

Association Casualty claims this event ignited the entire basis for the Counterclaim, the insurer asserts that the injury arose out of the contract and falls under the exclusion. The Court notes that Mitchell alleges the pricing of Mitchell products was undertaken as a service to the customers, not a contractual obligation. Moreover, Association Casualty cannot point to any alleged breach of contract by Major Mart in contesting the pricing of the products. Accordingly, the Court finds the "Breach of Contract" provision does not exclude coverage under the insurance policy.

The insurer next contends that the "Knowledge of Falsity" exclusion applies. Mitchell contended that Major Mart employees told its customers that Mitchell was distributing "stale" or "bad" beer and attempted to have a Mitchell driver arrested for "stealing beer" when the Major Mart manager would not accept beer 45 days past its "born on" date and the driver tried to take the products with him. While the Counterclaim argues that these actions were intentional on the part of Major Mart and Sharp, it does not go so far as to indicate that the statements were knowingly false. Not only does the Counterclaim accuse Major Mart and Sharp of "falsely disparaging Mitchell and its products" it contends that those "slanderous and defamatory statements" were made "intentionally, recklessly, or negligently." Therefore, Mitchell not only counterclaims against Major Mart and Sharp for those false statements intentionally made, but also for those statements negligently made. The Court finds that the "Knowledge of Falsity" does not preclude coverage.

The Court makes the same findings with regard to the exclusion for "Knowing Violation of Rights of Another." As noted above, the Counterclaim clearly seeks damages for actions and statements made with or without knowledge of falsity or that those actions would violate the

rights of another. Accordingly, the exclusion for knowingly violating the rights of another does not completely preclude Association Casualty's duty to defend.

Because the Court finds the Counterclaim alleges actions and conduct which would fall outside the exclusions to the insurance policy, the Court finds that Association Casualty does have a duty to defend Major Mart and Sharp against the underlying Counterclaim filed by Mitchell.

"Under Mississippi law, an insurer's duties to defend and indemnify its insured are distinct and separate duties requiring the use of different standards." Estate of Bradley v. Royal Surplus Lines Ins. Co., 647 F.3d 524, 529 (5th Cir. 2011). "Unlike the duty to defend, which can be determined at the beginning of the lawsuit, an insurer's duty to indemnify generally cannot be ascertained until the completion of litigation, when liability is established, if at all." Id. at 531. "This is because, unlike the duty to defend, which turns on the pleadings and the policy, the duty to indemnify turns on the actual facts giving rise to liability in the underlying suit, and whether any damages caused by the insured and later proven at trial are covered by the policy." Id. Accordingly, the Court finds that there are genuine disputes of material fact as to whether Association Casualty is required to indemnify Major Mart and Sharp under the contract of insurance as no final factual determination has been rendered in the underlying countersuit.

*Conclusion*

Major Mart and Gregory Sharp's Motion for Summary Judgment [23] is GRANTED as Association Casualty is contractually obligated to provide a defense in the underlying countersuit. Association Casualty's duty of indemnification will be determined at a later date. Association Casualty's Motion for Summary Judgment [30] is DENIED.

SO ORDERED, this the 8th day of July, 2013.

                                                      **/s/ Sharion Aycock**
                                                      **U.S. DISTRICT JUDGE**